DON R. WILLETT, Circuit Judge, dissenting:
I share the majority's appreciation for this settlement's practical value. But in my view, the district court lacked jurisdiction to grant the bar orders. The Receiver only had standing to assert the Stanford entities' claims. It could not release other parties' claims, or have the court do so, in exchange for a payment to the Stanford estate. For better or worse, the objecting plaintiffs' claims were beyond the district court's power.
I
Willis of Colorado, Inc., its affiliates, and Bowen, Miclette and Britt, Inc. injured the Stanford entities by failing to thwart the Ponzi scheme.[1] They participated in, or turned a blind eye to, Stanford officers' misdeeds. So the Receiver asserted breach of fiduciary duty and negligence claims against them. But Willis and BMB separately injured the Objectors. They sent the Objectors letters misrepresenting Stanford's soundness and its insurance coverage. So the Objectors asserted fraud and negligent misrepresentation against them. The Objectors' injuries are separate from Stanford's.
II
At its "irreducible constitutional minimum," standing requires that the plaintiff suffered an injury in fact, the injury is traceable to the defendant's actions, and the injury would likely be redressed by a favorable decision.[2] This adversity requirement applies whether the action is equitable *402 or for damages.[3]
I believe the Receiver lacked standing to assert claims for the Objectors' separate injuries.[4] This standing defect is jurisdictional.[5] And it extends to relief like the bar orders. In another recent Stanford case, SEC v. Stanford International Bank, Ltd. ("Lloyds") , the Receiver had settled claims against Stanford's director-and-officer insurers.[6] But we vacated the associated bar orders.[7] The court recognized that "[t]he prohibition on enjoining unrelated, third-party claims without the third parties' consent ... is a maxim of law not abrogated by the district court's equitable power to fashion ancillary relief measures."[8] If no party before the court has standing to assert a claim, the court generally lacks power to dispose of it.[9] Here, the bar orders disposed of the Objectors' claims without their consent and without the procedural protections of a class action.
The Receiver contends that the Objectors' claims are "factually intertwined" with its own. But having defendants in common (Willis and BMB) or having a common destination for the plunder (Stanford officers) does not make claims the same.[10] And the Objectors' right to participate in the receivership claims process does not change this. The receivership claims process pays for Stanford's liability out of Stanford's assets. If third parties like Willis and BMB injured both the Objectors and Stanford, they are liable to each.
This case is distinguishable from decisions that approved bar orders. In SEC v. DeYoung , the Tenth Circuit affirmed a bar order after an investment firm's receiver settled with the firm's former bank.[11] Unlike this case, the receiver had standing to settle individual victims' claims because they were based on the "same conduct" and the "same transactions"[12] -the bank's failure to monitor the firm's accounts.[13] The Tenth Circuit distinguished that situation from Liberte Capital Group, LLC v. Capwill , a case where the receivership entities lacked standing to sue a broker for its misrepresentations to investors.[14] In other words, DeYoung distinguished its holding from precisely this situation. Our decision in SEC v. Kaleta is also distinguishable.[15] It affirmed a bar order but didn't suggest that the settling defendants had made any representations directly to *403 the victims.[16] The bar order was limited to claims from one set of fraudulent notes.[17] All to say, authority for the bar orders here is thin to none.
III
Besides the lack of standing, the bar orders also do not fit within any affirmative source of federal jurisdiction. At least some of the Objectors' claims are state-law claims that could not be removed to federal court.[18] The district court lacked in rem jurisdiction over these claims, as in rem jurisdiction extends only to receivership property.[19] And receivership property consists of Stanford's assets, not its victims' claims.[20]
The district court had no ancillary jurisdiction either. Ancillary jurisdiction extends only to claims by or against the Receiver.[21] So the district court had no jurisdiction to adjudicate these claims. And in my view it had no jurisdiction to permanently enjoin them.[22]
IV
Federal courts cannot decide a claim's fate outside the "honest and actual antagonistic assertion of rights."[23] I would vacate the bar orders.
Respectfully, I dissent.

These facts are taken from the Receiver's and Objectors' pleadings. See Lujan v. Defenders of Wildlife , 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Id. at 560-61, 112 S.Ct. 2130.

See Janvey v. Democratic Senatorial Campaign Comm., Inc. ("DSCC") , 712 F.3d 185, 190 (5th Cir. 2013) (applying standing limitation to the Receiver).

Id. ("[A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors ....").

E.g. , Warth v. Seldin , 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("The rules of standing ... are threshold determinants of the propriety of judicial intervention.").

927 F.3d 830, 836 (5th Cir. 2019).

Id.

Id. at 841-42.

Cf. Smith v. Bayer Corp. , 564 U.S. 299, 315, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011) (holding plaintiff's claim could not be enjoined because he was not a party to prior action).

See, e.g. , N.Y. Life Ins. Co. v. Gillispie , 203 F.3d 384, 387 (5th Cir. 2000) (requiring same "nucleus of operative fact" for claim identity).

850 F.3d 1172 (10th Cir. 2017).

Id. at 1179 (quoting district court findings).

Id. at 1182.

Id. at 1181 (distinguishing Liberte , 248 F. App'x 650 (6th Cir. 2007) ).

530 F. App'x 360 (5th Cir. 2013).

See ids="3907464" index="110" url="https://cite.case.law/us/279/218/#p223">id.

Id. at 363 ("[T]he investors continue to retain all other putative claims against the Wallace Bajjali Parties that do not arise from the allegedly fraudulent notes that underlie this action.").

E.g. , Rishmague v. Winter , No. 3:11-CV-2024-N, 2014 WL 11633690, at *1 (N.D. Tex. Sept. 9, 2014) (remanding some Rupert Parties' claims to state court).

Cf. Riehle v. Margolies , 279 U.S. 218, 223-24, 49 S.Ct. 310, 73 L.Ed. 669 (1929) (distinguishing distribution of debtor's property from determination of claims against it).

See ids="3907464" index="116" url="https://cite.case.law/us/279/218/#p223">id. ; Lloyds , 927 F.3d at 841-42 ("[T]he court may not exercise unbridled authority over assets belonging to third parties to which the receivership estate has no claim."); DSCC , 712 F.3d at 190 ("[A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors ....").

See 12 Charles Alan Wright & Arthur R. Miller , Federal Practice & Procedure § 2985 (2d ed. 2018) ; see also Lloyds , 927 F.3d at 841-42 (stating power to fashion ancillary relief does not affect prohibition on enjoining unrelated claims).

See Lloyds , 927 F.3d at 841-42.

United States v. Johnson , 319 U.S. 302, 305, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943) (quoting Chi. & G.T. Ry. Co. v. Wellman , 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892) ).